MARION BISCHOFF *vs.* BOSTON AND MAINE RAILROAD
(and a companion case[1]).

Hampden.   September 23, 1954. — January 13, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Railroad,* Grade crossing.   *Negligence,* Invited person, Grade crossing.

Evidence, that a husband and his wife riding in an automobile on a public
way to their home found a railroad grade crossing blocked by a stand-
ing work train, and that they waited in the vicinity for about half an
hour and then, without making inquiry as to how much longer the
crossing would be blocked and because the wife mistakenly thought
she had only a limited time to get home to prepare their son's lunch
and meet him on his way home from school, decided to go home by
the only other route possible and were struck by a passenger train at
a private grade crossing on that route, did not show necessity for their
using the private crossing sufficient to give them the status of invitees
thereon.

TWO ACTIONS OF TORT.   Writs in the Superior Court dated
September 25, 1950.

The actions were tried before *Giles,* J., who ordered ver-
dicts for the defendant.

*John F. Moriarty,* for the plaintiffs.

*Frederick S. Pillsbury,* for the defendant.

WILKINS, J.   The plaintiff and her intestate, who was
her husband, on the morning of May 26, 1950, were riding
in an automobile owned and operated by him.   When they
came to the crossing over the defendant's tracks on Ferry
Street, a public way leading to their home near the Con-
necticut River in Holyoke, there was stopped on the cross-
ing a work train of the defendant obstructing their passage,
and men were working on both sides of the tracks.   After
riding in a public reservation for twenty to twenty-five min-
utes to consume time, they observed the work train still on

---

[1] The companion case is by Marion Bischoff, administratrix, against the
same defendant.

the crossing. They waited in the reservation entrance ten to twelve minutes more, and without making any inquiry, decided to reach their home by the only other way possible, which was over a private crossing, known as Sinclair's crossing, about 976 feet north of the Ferry Street crossing. In so doing they were struck by a passenger train of the defendant. The plaintiff was hurt, and her husband was killed.

The collision was at 10:25 A.M. While they were waiting in the reservation entrance, the plaintiff "figured" that it was about 11 o'clock. She wished to get back home because her eight year old son would come on the school bus at 12 o'clock, and she had to prepare his lunch, meet him across the tracks, bring him home, and return with him across the tracks to the bus at 12:45 P.M. The husband intended to do planting in his garden in the afternoon. We have summarized the facts most favorable to the plaintiff which the jury could have found. Her one exception in each case is to the direction of a verdict for the defendant.

The defendant by obstructing a public way "with cars or engines for more than five minutes at one time" admittedly violated G. L. (Ter. Ed.) c. 160, § 151. The plaintiff contends that she and her husband thereby became invitees on Sinclair's crossing, and on it were owed by the defendant the duty not to injure them negligently. She urges that they had a right of way by necessity, and relies upon *Campbell* v. *Race*, 7 Cush. 408, which was an action of trespass against a traveller who found the highway impassable and drove his team over the plaintiff's adjoining land. We think, however, that the plaintiff fails to present a case within the principle for which she contends. A controlling authority is *Lynch* v. *Boston & Maine Railroad*, 226 Mass. 522, where the plaintiff in wheeling her baby in a carriage along a public way in Peabody reached a railroad crossing which was blocked by a standing freight train. While she tried to pass around the train on the tracks outside the crossing, the train struck her. In rejecting a contention that under *Campbell* v. *Race*, the plaintiff had a right

to cross the tracks outside of the limits of the way, it was said at page 527: "The doctrine of *Campbell* v. *Race* is that in case of necessity a traveller on a highway is justified in going on adjoining land when the highway is completely blocked. But the right to go extra viam in case of impassable obstructions is limited to cases of necessity. . . . It is plain that under this rule a finding was not warranted that the plaintiff had a right to go across the tracks beyond the limits of Wallace Street. The fact that she wanted to get home to her dinner is not enough even if it was true that the train was to stay there for fifteen minutes." It was also said, at page 528, that the fact that the crossing had been obstructed by the train for more than ten minutes "did not give the plaintiff a right to cross the tracks outside of the limits of Wallace Street."

The plaintiff seeks to distinguish the *Lynch* case on the grounds that there it did not affirmatively appear, as it does here, that no other way home was available; that the public way here was blocked while the plaintiff and her husband actually waited for more than a half hour, while the plaintiff in the *Lynch* case was unwilling to wait for fifteen minutes; and that there was no urgency in the *Lynch* case "to get dinner" when the crossing was to be blocked for fifteen minutes, whereas the plaintiff in the cases at bar did not know how much longer the crossing would be blocked and had only a limited time to prepare her son's lunch and to meet him on the other side of the crossing on his way home from school. These supposed grounds of distinction are insubstantial. The plaintiff had one hour and thirty-five minutes from the time of the collision until noon when the son was due to arrive. She and her husband did not stop at the public crossing, and made no attempt to inquire how long it would be obstructed. It does not appear that, when they made their fateful decision, the public crossing was to continue obstructed for any length of time, or that there was a necessity for risking an act so fraught with danger.

We have decided the cases on the contentions of the

plaintiff. As there is no need, we make no more precise determination as to the status on the private crossing of the plaintiff and her husband. See *Tisdale* v. *Norton,* 8 Met. 388, 391; *Shepardson* v. *Colerain,* 13 Met. 55, 60, 61. We likewise have not found occasion to decide that the ruling below might be upheld on the ground that the violation of G. L. (Ter. Ed.) c. 160, § 151, was only a condition and not a cause of the accident, or that the purpose of the statute was to protect travellers against delay and not against harms arising from even careful attempts to prevent the effects of delay. *Key* v. *Southern Railway,* 46 Fed. (2d) 993 (C. C. A. 5). *Johnson* v. *Chicago Great Western Railway,* 242 Minn. 130. See *Falk* v. *Finkelman,* 268 Mass. 524, 527; *Peterson* v. *Boston & Maine Railroad,* 310 Mass. 45, 53–54; *Kralik* v. *LeClair,* 315 Mass. 323, 326; *Shaw* v. *Boston American League Baseball Co.* 325 Mass. 419, 423–424.

*Exceptions overruled.*